IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
EL DORADO DIVISION

KEITH DENNIS                                                                                       PLAINTIFF

vs.                                    Civil No. 1:08-cv-01062

MICHAEL J. ASTRUE                                                                         DEFENDANT
Commissioner, Social Security Administration


**REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Keith Dennis ("Plaintiff") brings this action pursuant to § 205(g) of Title II of the Social Security Act ("The Act"), 42 U.S.C. § 405(g) (2006), seeking judicial review of a final decision of the Commissioner of the Social Security Administration ("SSA") denying his applications for a period of disability, Supplemental Security Income ("SSI"), and Disability Insurance Benefits ("DIB") under Titles II and XVI of the Act.

Pursuant to the provisions of 28 U.S.C. § 636(b)(1) and (3) (2005), the Honorable Harry F. Barnes referred this case to the Honorable Barry A. Bryant for the purpose of making a report and recommendation. The Court, having reviewed the entire transcript and relevant briefing, recommends that the ALJ's determination be **AFFIRMED.**

**1. Background:**

Plaintiff protectively filed his applications for SSI and DIB on June 15, 2005. (Tr. 15, 48-61, 65-70). Plaintiff alleged he was disabled due to the following impairments: seizures, left knee pain, and lower back pain. (Tr. 328-333). Plaintiff alleged an onset date of July 1, 2004 in his DIB

application and an onset date of February 5, 2005 in his SSI application.[1]  (Tr. 48, 65).  These applications were initially denied on December 15, 2005 and were denied again on reconsideration on September 6, 2006.  (Tr. 15, 63-64).  On October 11, 2006, Plaintiff requested an administrative hearing on his applications.  (Tr. 46).  With this request, Plaintiff stated the following: "I am disabled. I cannot work because of my seizures. The decision is against or contrary to the evidence." *See id.*

The hearing request was granted, and this hearing was held on May 30, 2007 in El Dorado, Arkansas.[2]  (Tr. 321-350).  Plaintiff was present and was represented by counsel, Mark Chadick, at this hearing.  *See id.*  Plaintiff and VE Ken Waits testified at this hearing.  *See id.*  On the date of this hearing, Plaintiff was forty (40) years old, which is defined as a "younger person" under 20 C.F.R. § 404.1563(c) (2009), and had only completed the seventh grade in high school.  (Tr. 324).

On September 27, 2007, the ALJ entered an unfavorable decision denying Plaintiff's applications for DIB and SSI.  (Tr. 15-24).  In this decision, the ALJ determined Plaintiff met the disability insured status requirements of the Act only through September 30, 2004, which is before his alleged onset date.  (Tr. 15).  Based upon that finding, the ALJ determined Plaintiff was not entitled to DIB.  (Tr. 15, 23, Finding 1).  However, since the insured status requirements did not apply to Plaintiff's SSI application, the ALJ still performed the sequential analysis for Plaintiff's SSI application.

Specifically, the ALJ determined Plaintiff had not engaged in Substantial Gainful Activity

---

[1] At the administrative hearing, Plaintiff amended his alleged onset date to May 8, 2005, which is the date he had his first seizure.  (Tr. 345-347).

[2] The hearing was held *via* video teleconference.  The ALJ and the vocational expert ("VE") were in Little Rock while the claimant and his mother were in El Dorado.

2

("SGA") since May 8, 2005, his alleged onset date. (Tr. 23, Finding 2). The ALJ determined Plaintiff had the following severe impairments: seizure disorder and psychotic disorder (NOS). (Tr. 23, Finding 3). The ALJ also determined, however, that Plaintiff did not have an impairment or a combination of impairments that met or medically equaled one of the listed impairments in the Listing of Impairments in Appendix 1 to Subpart P of Regulations No. 4 ("Listings"). (Tr. 23, Finding 3).

In this decision, the ALJ also evaluated Plaintiff's subjective complaints and determined his RFC. (Tr. 23, Findings 4,7). First, the ALJ evaluated Plaintiff's subjective complaints pursuant to the requirements of *Polaski v. Heckler,* 739 F.2d 1320 (8th Cir. 1984) and found his claimed limitations were not entirely credible. (Tr. 19-21). Second, the ALJ determined, based upon this review of Plaintiff's subjective complaints, the hearing testimony, and the evidence in the record, that Plaintiff retained the following RFC:

> The claimant has the residual functional capacity to lift and carry 20 pounds occasionally, and 10 pounds frequently; he can stand or walk for a total of 6 hours in an 8 hour day; he can sit for at least 2 hours; he can push or pull 10 pounds frequently and 20 pounds occasionally; he can occasionally climb, balance, stoop, bend, crouch, kneel, or crawl; he should avoid work involving unprotected heights, dangerous moving machinery, using firearms, or driving; he should avoid work around excessive chemicals, noise, humidity, dust, fumes, temperature extremes, vibrations, gasses, and other pulmonary irritants; and he is able to perform work where interpersonal contact is incidental to the work performed, complexity of tasks is learned and performed by rote, few variables, little judgment, and supervision required is simple, direct, and concrete.

(Tr. 23, Finding 7).

The ALJ then evaluated Plaintiff's Past Relevant Work ("PRW"). (Tr. 23-24, Findings 6, 11). Plaintiff and the VE testified at the administrative hearing regarding this issue. (Tr. 321-350). Based upon this testimony, the ALJ determined Plaintiff had no PRW that he could perform. (Tr.

347). However, the VE also testified regarding other work existing in the national economy. (Tr. 348-349). Specifically, the VE testified a hypothetical person with Plaintiff's RFC, work experience, education, and age could perform work as a small products assembler (light, unskilled) with 454,000 such jobs in the national economy and 7,800 such jobs in Arkansas. (Tr. 348-349). Based upon this testimony, the ALJ determined Plaintiff could perform other work existing in significant numbers in the national economy and was not disabled during the relevant time period. (Tr. 24, Finding 12).

On November 30, 2007, Plaintiff requested that the Appeals Council review the ALJ's unfavorable decision. (Tr. 10). *See* 20 C.F.R. § 404.968. On April 21, 2008, the Appeals Council declined to review the ALJ's unfavorable decision. (Tr. 5-9). On June 11, 2008, Plaintiff filed the present appeal. (Doc. No. 1). Both parties have filed appeal briefs.[3] (Doc. Nos. 30-32, 36). This case is now ready for decision.

## 2. Applicable Law:

In reviewing this case, this Court is required to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *See* 42 U.S.C. § 405(g) (2006); *Ramirez v. Barnhart,* 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance of the evidence, but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. *See Johnson v. Apfel,* 240 F.3d 1145, 1147 (8th Cir. 2001). As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome or because the Court would have decided the case differently. *See*

---

[3] Instead of an appeal brief, Plaintiff actually filed a Motion for Summary Judgment with a memorandum brief and a statement of facts in support thereof. (Doc. Nos. 30-32). This Court construed this motion and the supporting documents as an appeal brief. (Doc. No. 33).

*Haley v. Massanari,* 258 F.3d 742, 747 (8th Cir. 2001). If, after reviewing the record, it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. *See Young v. Apfel,* 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well established that a claimant for Social Security disability benefits has the burden of proving his or her disability by establishing a physical or mental disability that lasted at least one year and that prevents him or her from engaging in any substantial gainful activity. *See Cox v. Apfel*, 160 F.3d 1203, 1206 (8th Cir. 1998); 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Act defines a "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382(3)(c). A plaintiff must show that his or her disability, not simply his or her impairment, has lasted for at least twelve consecutive months. *See* 42 U.S.C. § 423(d)(1)(A).

To determine whether the adult claimant suffers from a disability, the Commissioner uses the familiar five-step sequential evaluation. He determines: (1) whether the claimant is presently engaged in a "substantial gainful activity"; (2) whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities; (3) whether the claimant has an impairment that meets or equals a presumptively disabling impairment listed in the regulations (if so, the claimant is disabled without regard to age, education, and work experience); (4) whether the claimant has the Residual Functional Capacity (RFC) to perform his or her past relevant work; and (5) if the claimant cannot perform the past work, the burden shifts to the Commissioner to prove that there are other jobs in the national economy that the claimant can

perform. *See Cox,* 160 F.3d at 1206; 20 C.F.R. §§ 404.1520(a)-(f). The fact finder only considers the plaintiff's age, education, and work experience in light of his or her RFC if the final stage of this analysis is reached. *See* 20 C.F.R. §§ 404.1520, 416.920 (2003).

**3. Discussion:**

Plaintiff brings the present appeal claiming the following: (A) the ALJ erred by failing to give adequate weight to the opinion of his treating physician, Dr. Mirfat Hariri-Bird, M.D. ("Dr. Bird") in accordance with 20 C.F.R. § 404.1527; (B) the ALJ erred by failing to properly evaluate Dr. Bird's opinion pursuant to 20 C.F.R. § 404.1527; and (C) the ALJ erred by failing to recontact Dr. Bird as required by 20 C.F.R. § 404.1512(e). (Doc. No. 32, Pages 2-11). In response, Defendant argues that the ALJ gave proper weight to Dr. Bird's opinion and that the ALJ was not required to recontact Dr. Bird for additional information. (Doc. No. 36, Pages 4-12). This Court will address both Plaintiff's arguments.[4]

    **A.    Weight Given to Dr. Bird's Opinion**

Plaintiff claims the ALJ did not give proper weight to the opinion of his treating physician, Dr. Bird. (Doc. No. 32, Pages 2-10). Dr. Bird primarily treated Plaintiff for his alleged seizure disorder, but he also treated Plaintiff for knee and back pain and COPD. (Tr. 131-150, 276-285). Plaintiff claims Dr. Bird has been treating him since 2005 and that his opinions are entitled to controlling weight. *See id.* Specifically, Plaintiff claims there are three types of records from Dr. Bird that the ALJ ignored: (1) his treatment records from 2005 until 2007; (2) the RFC form he completed on July 3, 2007; and (3) his opinion letter dated November 19, 2007. *See id.* In response, Defendant argues that the ALJ gave proper weight to Dr. Bird's opinion and discounted it because

---

[4] Since Plaintiff's first and second arguments are essentially the same (and Plaintiff briefed these issues together), this Court will address these arguments together.

it was inconsistent with the record as a whole and with Dr. Bird's own treatment records.  (Doc. No. 36, Pages 5-10).  After reviewing these medical records, this Court finds the ALJ properly evaluated Dr. Bird's treatment records and properly assigned little weight to Dr. Bird's RFC form completed on July 3, 2007.  This Court also finds that Dr. Bird's opinion letter dated November 19, 2007 does not require a remand.

### (1)   Treatment Records from Dr. Bird

Dr. Bird's treatment records for Plaintiff from the relevant time period date from March 21, 2005 until May 4, 2007.  (Tr. 131-150, 276-285; Doc. No. 32, Ex. 1).   These records reflect that even Dr. Bird questioned whether Plaintiff suffered from a seizure disorder and whether Plaintiff consistently took his medication.  Specifically, on May 8, 2005, Plaintiff was admitted to the emergency room for a suspected seizure disorder.  (Tr. 143-144).  Plaintiff was prescribed Dilantin pending the results of his EEG and was released.  (Tr. 143).  On May 9, 2005, Plaintiff's EEG reflected a "normal awake and sleep EEG."  (Tr. 142).

On May 12, 2005, Dr. Bird noted that Plaintiff had a "? sz [seizure] disorder."  (Tr. 141). Dr. Bird noted that he needed to follow-up on Plaintiff's usage of Dilantin.  (Tr. 141).  On May 26, 2006, Dr. Bird noted that Plaintiff forgot to take his Dilantin.  (Tr. 141).  On June 13, 2005 and July 13, 2005, Plaintiff reported to Dr. Bird that he had suffered from several seizures.  (Tr. 138). However, on July 19, 2005, Dr. Bird found the amount of Dilantin in Plaintiff's bloodstream was below the therapeutic level (Plaintiff's level was 4.3 L with the normal levels being between 10.0 to 20.0).  (Tr. 137).  On the lab report reflecting the low level of Dilantin, Dr. Bird noted that he "need to ↑ the dose *if taking the med[s]*."  (Tr. 137) (emphasis added).  Once again, on August 10, 2005, Plaintiff's medical records reflected that he had a sub-therapeutic level of Dilantin in his

bloodstream. (Tr. 136).

On August 13, 2005, Plaintiff reported having had no seizures for one month, and Dr. Bird found Plaintiff's seizures were "controlled." (Tr. 135). On October 13, 2005, Dr. Bird again found Plaintiff had "controlled seizures." (Tr. 135). On January 24, 2006 and February 23, 2006, Plaintiff again reported suffering from seizures. (Tr. 134). Thereafter, on March 28, 2006, Dr. Bird reported Plaintiff's Dilantin level was still sub-therapeutic at 0.6 L. (Tr. 133). Dr. Bird noted that Plaintiff was "*claiming that he is taking Dilantin*" (emphasis added), which indicates that Dr. Bird may not have believed Plaintiff when he reported taking this medication. (Tr. 133). On May 1, 2006, Plaintiff's Dilantin level was still sub-therapeutic at 0.3 L. (Tr. 132). On July 25, 2006, Dr. Bird noted that he questioned whether Plaintiff even suffered from a seizure disorder: "SZ Disorder . . . alleged??" (Tr. 285). On September 21, 2006, Dr. Bird found Plaintiff's Dilantin levels were still sub-therapeutic at 5.8 L. (Tr. 284). On October 23, 2006, Dr. Bird reported that Plaintiff was taking medication and had not suffered from a seizure in a month. (Tr. 283).

Based upon this review, these records clearly indicate that Plaintiff had a questionable seizure disorder at best. Dr. Bird was also unsure as to whether Plaintiff consistently took his medication, and his frequent testing of Plaintiff's Dilantin levels further indicates that Dr. Bird did not trust Plaintiff's representations. Therefore, this Court finds the ALJ did not err in his evaluation of Dr. Bird's treatment records.

**(2)    Dr. Bird's RFC Evaluation**

Dr. Bird's "Residual Functional Capacity Form for the Social Security Administration" was dated July 30, 2007, and it reflects Dr. Bird's assessment of Plaintiff's functional limitations. Specifically, as a part of this one-paged "checklist" form, Dr. Bird found Plaintiff was unable to do

a combination of walking or standing for two hours in an eight-hour workday due to his left knee pain. (Tr. 315). Dr. Bird provides no explanation for this finding. (Tr. 315-316). After reviewing this form, the ALJ declined to adopt this finding. (Tr. 15-24).

This Court finds the ALJ's decision to give little weight to Dr. Bird's responses is supported by substantial evidence in the record. Notably, Dr. Bird's own treatment records for Plaintiff reflect very little treatment for left knee problems. Plaintiff reported knee pain at several of his visits to Dr. Bird. (Tr. 134-135, 141, 145, 280). However, these reports of knee pain to Dr. Bird were not consistent. (Tr. 131-150, 276-285). Furthermore, x-rays of Plaintiff's left knee on April 3, 2007 reflected no acute fractures or dislocations and no signs of any destructive lesions. (Tr. 279). In fact, the radiologist only found "[c]alcification probably within the patellar tendon suggesting remote trauma." (Tr. 279) (emphasis added). There is no indication that such calcification causes Plaintiff to be unable to perform light work. Therefore, the ALJ did not err in evaluating Dr. Bird's RFC responses.

### (3)     Letter Opinion from Dr. Bird

The one-paragraph letter from Dr. Bird attached to Plaintiff's appeal brief is dated November 19, 2007. This letter is not a part of the record. Therefore, this Court must consider whether this letter requires that this case be remanded to the SSA. 42 U.S.C. § 405(g). This letter provides as follows: "Keith Dennis is a patient of mine who suffers from seizure disorder. He is on medication and unable to get his level under control, he is still with seizure activity. For any further information feel free to contact the office." (Doc. No. 32, Ex. 2). As noted above, this finding regarding Plaintiff's seizures is not supported by Dr. Bird's other treatment records. Therefore, this case need not be remanded for consideration of this letter. 42 U.S.C. § 405(g).

9

### B. Recontacting Dr. Bird

Plaintiff also claims the ALJ erred by failing to recontact Dr. Bird pursuant to 20 C.F.R. § 404.1512(e). (Doc. No. 32, Page 9). In accordance with this regulation, an ALJ is required to recontact a treating physician if the information the ALJ obtains "is inadequate for us [the SSA] to determine whether you [claimant] are disabled." However, in this case, there was no need to recontact Dr. Bird because the information obtained from Dr. Bird (as outlined above) was adequate to determine Plaintiff was not disabled.

Furthermore, Plaintiff has made no showing that the information in the record was inadequate or that he was prejudiced by the ALJ's failure to recontact Dr. Bird. *See Onstad v. Shalala,* 999 F.2d 1232, 1234 (8th Cir. 1993) (holding that "Mr. Onstad argues that his cause should be remanded because the ALJ did not fully develop the record. In considering this argument, our inquiry is whether Mr. Onstead was prejudiced or treated unfairly by how the ALJ did or did not develop the record; absent unfairness or prejudice, we will not remand."). Therefore, this case should not be remanded for that reason.

### 4. Conclusion:

Based on the foregoing, the undersigned finds that the decision of the ALJ, denying benefits to Plaintiff, is supported by substantial evidence and recommends that the ALJ's decision be affirmed.

**The parties have ten (10) days from receipt of this Report and Recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger *de novo* review by the**

district court.  *See  Thompson v. Nix*, **897 F.2d 356, 357 (8th Cir. 1990).**

  **ENTERED** this **30th day of July, 2009.**

                /s/   Barry A. Bryant
                HON. BARRY A. BRYANT
                U.S. MAGISTRATE JUDGE